cat / div 2255/510/Dade
Case # 99-CD-903-PCH
Judge PCH    Mag PGW     UNITED STATES DISTRICT COURT
Motn Ifp AD    Fee pd $ ——— SOUTHERN DISTRICT OF FLORIDA
Receipt # _____        MIAMI DIVISION

FILED by PE D.C.

NOV 2 6 2014

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI


MUJAHAD SHOUMAN,

      Petitioner,

v.                                    Case No. 14-_____
                                      (04-22482-Civ-Huck)
UNITED STATES OF AMERICA,             (99-00903-Cr--HUck)

      Respondent.           **14-cv-24548-Huck/White**

_____/

## MOTION TO VACATE, OR SET ASIDE CONVICTION
## UNDER 28 U.S.C. §2255(f)(4)

The petitioner, Mujahad Shouman, (hereinafter, "Shouman" or "Petitioner") proceeding pro se and in want of counsel, files this Motion to Vacate or Set Aside Conviction Under 28 U.S.C. §2255(f)(4) and requests this Court vacate or set aside his conviction upon good cause shown:

### Introduction

This motion attacks the criminal judgment entered in this case on March 30, 2001, upon recently discovered of exculpatory evidence suppressed by the Government during his criminal proceeding, and is being filed within the limitation period establish pursuant to 28 U.S.C. §2255(f)(4), infra.

### Factual and Procedural History

1. This Court will have the benefit of the file in this case. There is no need to repeat the entire factual and procedural history of the case herein. Suffice to say that on November 22, 2000, Mr. Shouman, along with his father, Mohammed Shouman, Sammour Attallah, an individual named Terrence Smith,[1] proceeded

_____

[1] Prior to this date petitioner had not met Mr. Smith, heard of him, and/or any other type of contact or relationship with this individual. See attached, as Exhibit "A", Mr. Shouman Declaration, ("Shouman Decl.") at ¶ 3.

to trial by jury upon charges of conspiracy to commit offenses against the United States in violation of 18 U.S.C. §371, (Count I) and arson with personal injury and death in violation of 18 U.S.C. §§844(i) and 2, (Count II).  Seven days later Petitioner along with his father and Mr. Smith, was found guilty as charged.[2] (R2: 129-130; R3:131-136 & 142; DE 246 at 176-177).[3]

2.    Thereafter, petitioner was sentenced to 60 months imprisonment as to Count I, and to Life imprisonment as to Count II, (R:2 195) and subsequently, committed to Lewisburg, United States Penitentiary (USP Lewisburg) to serve his sentence. While in that prison, petitioner took his direct appeal, submitted a petitioner for writ of certiorari and filed his initial §2255 motion, which was denied in March 2005.   From USP Lewisburg, petitioner was transferred to various prisons (Exh. A at 1) until his arrival to Coleman USP-1 in December 2013, where he met again with Mr. Smith and learned about the existence of evidence he had discovered indicating the arrest and grand jury indictment in the State of Florida of an individual named Louis Mohorn for the same arson he was charged, found guilty by a jury and sentenced to life imprisonment.  (Exh. A at ¶¶ 3-4).

3.    Not content with the evidence showed to him, petitioner decided to initiate his own investigation to corroborated such and, if possible, to further learn the reasons why the government had suppressed that evidence from petitioner and the Court, and therefore, filed comprehensive  public record request with proper State of Florida authorities (i.e., City Clerk of Pompano Beach Florida, the Florida Department of Law Enforcement, ("FDLE")) and a Freedom of Information Act, ("FOIA")

---

[2]  The guilty finding by the jury was based 'primarily' upon the testimony of convict criminal in exchange for reduction of their sentences or other benefits.

[3]  "R" stands for the various volumes of the record prepared in connection with the appeal of this case.  "DE" followed by a number(s) refers to the document(s) as it was entered in the Criminal Docket, styled above.

request with the "arresting federal law enforcement agency," the Alcohol, Tobacco & Firearm agency, ("ATF"). Exhibit "B".

4.   Petitioner further, attempted to contact his trial and appeal attorneys (Messrs. Levenson and May), for assistance on the matter, and even the Office of Government Information Services, ("OGIS") in order to assist him to expedite his FOIA request with the ATF, (id). Exhibit "C". However, he has been unable to to obtain any assistance at all from either source, infra.

5.   Inasmuch as the "one-year" limitation period to permit the filling of a 28 U.S.C. §2255 motion to vacate conviction under Subsection (f)(4), ("§2255(f)(4) motion") is approximating to its end, (i.e., around December 15, 2014), and petitioner still has been unable to obtain: (1) additional information from the above named government or state agencies, needed to corroborate the evidence provided to him by Mr, Smith (a few days after his arrival to Coleman UPS-1 ); and (2) any assistance for his former attorneys or the government agency ("OGIS") that is supposed to assist in this type of situation.[4] Petitioner, is submitting this motion (with the evidence available at this time)[5] expecting the Court will permit presentation of further evidence, (after the release of such from the above named agencies, id at ¶3) in the event that such de still necessary herein.

---

[4] E.g., The FDLE, responded that the public records requested had been purged in accordance wit the Florida's record retention schedule.   The Pompano Beach Police Department is about to release in the near future around 3,500 pages of documents, related the arrest of Mr. Mohorn on charges of "Premeditate Murder by Arson," upon of payment for services. The FOIA request to ATF is still pending to this date, as the OGIS was unable to obligate that agency to expedite such a FOIA request, and the letter to the attorneys were conditioned to payments of substantial fees or ignored at all.   Exhibit "D".

[5] I.e., a copies of a criminal complaint filed by the Pompano Police Department, dated July 22, 1994, charging Mr. Mohorn as the author of the "same" arson resulting in death for which Petitioner had been convicted in 2001, based on the testimony of various eyewitnesses who saw Mr. (continued on next page.......)

3

## Argument

### I. Issue

WHETHER THE GOVERNMENT'S FAILURE TO DISCLOSE FAVORABLE EVIDENCE BEFORE TRIAL, "THAT COULD HAVE ASSISTED PETITIONER TO ESTABLISHED A MERITORIOUS REASONABLE DOUBT DEFENSE ABOUT THE AUTHOR OF THE ARSON," IN SPITE OF ITS OBLIGATIONS UNDER BRADY V. MARYLAND, 373 U.S. 83 AND THE DUE PROCESS OF THE CONSTITUTION REQUIRES REVERSAL OF HIS CONVICTION AND A NEW TRIAL IN THIS CASE?

### II. Rule of Law

6.   The Antiterrorism and Effective Death Penalty Act, ("AEDPA")  mandates that §2255 motion must be filled within one-year of "the date of which the judgment of conviction become final." [28 U.S.C. §2255 ¶6]. However, a petitioner my be entitled to equitable tolling......if he shows that the motion was based on new facts within the meaning of §2255(f)(4).  I.e., the date on which the facts supporting the claims or claims presented could have been discovered through the exercise of due diligence.  Expressly, where the petitioner shows that "he has been pursuing his rights diligently, but some extraordinary circumstances stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010); San Martin v. McNeil, 633 F.3d 1257, 1267 (11th Cir. 2011), **accord.**

7.   The Supreme Court has also stated that untimeliness should be excused when the movant shows "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." McQuiggin v. Perkins, 569 U.S. ___, ___, 133 S Ct. 1924, 1935 (2013).

---

5  (...continued from previous page) Morhon: "open the door of the business and throw the plastic jug inside it;" "arguing with the victim about money, and thereafter, walking away at a fast pace, at the time the fire began;" and/or placed him in the area before or at"the time the fire began." (Complaint at pp. 3-), as well as a couple of "local" newspaper articles from 1994, given some detail about the incident and Mr. Mohorn's motives for causing the arson. Exhibit "E".

4

8.   Further, the limitation period begins to run when the facts "could have been discovered through the exercise of due diligence, not when they were actually discovered." Aron v. United States, 291 F.3d 708, 711 (11th Cir. 2002)(quotation omitted).   Additionally, "an application that merely alleges that the applicant did not actually knows the facts underlying his or her claims does not pass "the due diligence test."   In re Boshers, 110 F.3d 1530, 1540 (11th Cir. 1997).

9.   To support a Brady claim on a collateral attack a petitioner must show evidence that: (1) the prosecution possessed evidence favorable to the defendant, because it was either exculpatory or impeaching, yet did not disclose it to the defense; or (2) the prosecution suppressed evidence such that the defense did not otherwise possess and could not reasonably have obtained it; and (3) the evidence was material, and its absence yielded prejudice. Gary v. Hall, 558 F.3d 1229, 1255 (11th Cir. 2009). ("Evidence is material so as to establish prejudice only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome of the case.")(quotes and cite omitted).   See, also Kyles v. Whitley, 514 U.S. 419, 436, 115 S. Ct. 1555 (1995) ("A 'reasonable probability' of a different result is.... shown when the Government's evidentiary suppresion 'undermines confidence in the outcome of the trial.'").

10.   Under Brady, the prosecution has an affirmative duty to disclose any exculpatory evidence "where the evidence is material either to guilty or punishment...." Withholding evidence favorable to an accused is considered a violation of due process. Brady v. Maryland, 373 U.S. at 87.   This "disclosure" duty is mandate by constitutional due process requirements and its consistent with the prosecutor's duty to seek justice, not to just win cases.   Berger v, United States, 295 U.S. 78, 88, 55 S. Ct. 629, 633 (1935)("The United States Attorney

5

is the representative not of an ordinary party to a controversy, by a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest in criminal prosecution is not that it shall win a case, but that to justice be done.").

11.  Further, Brady requirement that government possessed the exculpatory evidence can be satisfied if the evidence was in possession of prosecutor or anyone over whom prosecutor has authority.   United States v. Spagnoulo, 960 F.2d 990, 994 (11th Cir. 1992).  This reasoning have been held by other courts in a variety of contexts, as information maintained by cooperating entities falls within the scope of the government's Brady obligation. See, e.g., United v.Auten, 632 F.2d 478, 481 (5th Cir. 1980)(government has duty to seek out "information readily available to it".....);  United States v. Deutsch, 475 F.2d 55 (5th Cir. 1973)(overruled on other grounds by, U.S. v. Henry, 749 F.2d 55 (5th Cir. 1984)) ( government had duty under Brady to obtain exculpatory information in possession of the United States Postal Service).  See also Bowe v. United States, 2009 U.S.  Dist LEXIS 77857 n. 38 (S.D. Ga May 20, 2009)(case cited thereto). Furthermore, the prosecution has a duty to "learn of any favorable evidence known to others acting in the government's behalf in the case, including the police." Kyles v. Whitley, 515 U.S. 419, 437-38, 115 S. Ct. 1555-1567-68 (1995).   More, to make a thorough inquiry of all enforcement agencies that had a potential connection with witnesses.   United States v. Thornton, 1 F.3d 149, 158 (3rd Cir. 1993); Carey v. Duckworth, 738 F.2d 875, 877-78 (7th Cir. 1984)("[A] prosecutor's office cannot get around Brady by keeping itself ignorance, or compartmentalizing information about different aspect of the case.").

### III. Analysis

12.  Petitoner realleges and restates the allegations in paragraphs 1 through 5, as if fully set forth again herein, he further states that since he is acting

6

in a pro se capacity, subjected to frequent unscheduled lock downs, and very limited access to the prison law library, etc., he will keep this analysis simple.

13. **Timeliness of Petitioner's §2255(f)(4) Motion.** Petitioner acknowledges that under the AEDPA he must first show that his "second-in-time" § 2255 motion meet the "one-year" limitation period from the latest of the four events specified under 28 U.S.C. §2255¶6. More specifically, he must show that his "second-in-time" motion to vacate or set aside conviction (Motion to Vacate) is not time barred by the AEDPA, (i.e., he filed his motion to vacate within the "one-year" from the date on which the facts supporting his Brady/Due Process, prosecutorial misconduct claim was discovered through the exercise of due diligence, [28 U.S.C. §2255(f)(4). Since, petitioner learned that the government had suppressed "favorable and exculpatory" evidence from him, (that could have been used to establish a meritorious reasonable doubt defense about the author of the arson that caused a death before trial) in or around December 15, 2013. (Shouman Decl. at   ). On its face, this motion is timely filed under the AEDPA, and subsection (f)(4) of Title 28 U.S.C. §2255¶6.

14. **Due Diligence.** Petitioner further acknowledges that he also must show that the "post-judgment acquired evidence, was obtained through the exercise of due diligence, (id). In other words, petitioner must explain the reasons for not having discovered the exculpatory evidence, (underlying his Brady/Due Process prosecutorial misconduct claim) sooner. The reasons for not having this discovered such an information sooner are simple, but nevertheless, excusable and justified under the circumstances the petitioner has endured since his commitment to prison, as well as his blind faith in the American Judicial and Adversary

---

⁶ See, Id footnote 1, (Shouman Decl. at ¶4 ). See, also Mr. Terrence Smith's Declaration, ("Smith Decl.") at ¶ 7, attached as Exhibit "F".

System, and are set forth below.

15. **The Definition of Due Diligence Under the AEDPA.** The AEDPA does not defined the phrase "due dilingence" that appears in several of its provisions, including §2255, and it has no clearly accepted meaning in the habeas corpus context. See, e.g., <u>Johnson v. United States</u>, 544 U.S. 295, 309 n.7, 125 S. Ct. 1571, 1581 n. 7 (2005(AEDPA's "due diligence" standard is an inexact measure"); <u>Bush v. Singletary</u>, 99 F.3d 373, 375 (11th Cir. 1996) ("The phrase "due diligence" is not define anywhere in the AEDPA, but should be considered in light of the totality of the circumstances including a petitioner's confinement in prison and any special restriction that incarceration may impose.....)(emphasis added herein); <u>Moore v. Knight</u>, 368 F.3d 936, 940 (7th Cir. 2004)("a due diligence inquiry take into account that prisoners are limited by their physical confinement"). Further, the "due diligence" mandate does not require a prisoner to undertake repeat exercise in futility or to exhaust every imaginable option, but rather to make reasonable efforts, and that the inquiry to be individualized, taking into account the conditions of confinement and the reality of the prison system. <u>Aron v. United States</u>, 291 F.3d at 711-15.

16. **Petitioner's Reason for Not Having Discovered the Favorable/Exculpatory Evidence Sooner.** Upon his conviction and sentence petitioner was transferred from the Federal Detention Center in Miami, Florida ("FDC Miami") to the United States Penitentiary in Lewisburg, Pennsylvania (Lewisburg USP) where the conditions of confinement were very severe and his communication with outside world very limited, (i.e. without access to the internet, local Florida newspapers, computerized switchboard telephone system commonly used in government agencies and public libraries, etc.) to instigate a fishing expedition about any possible prosecutorial or other government misconduct that could have occurred

8

during his criminal prosecution. Expressly, for a person that: (1) had never been imprisoned or face a criminal proceeding in his life before; (2) had been educated to have faith in the American Judicial and Adversary System; and (3) was under the impression that the government would never suppress evidence implicating another person in the arson for which he was accused, just to win the case. See, e.g., The ABA STANDARD FOR CRIMINAL JUSTICE: PROSECUTOR FUNCTION......., 3d. §3-1.2(c) (1993) ("The duty of the prosecutor is to see justice not merely convict.").[7]   See   also, Banks v. Dretke, 540 U.S. 668, 694, 124 S. Ct. 1256 (2004)(holding, that a defendant may "assume that prosecutors would not stoop to improper litigation conduct to advance prospects for gaining conviction."); Strickler v. Greene, 527 U.S. 263, 287, 119 S. Ct. 1936 (1999)(the presumption, well established by tradition and experience, that prosecutors have fully discharged their official duties, is inconsistent with the novel suggestion that a conscientious defendant has a procedural obligation to assert constitutional error on the basis of mere suspicion that some some prosecutorial misstep occurred).

17.   Thereafter, petitioner transferred to various prisons, (id. at ¶2) where he was subjected to the same limitations stated above; more significant;, still under the impression that there was no reason to suspect that the prosecution in his case could had committed the despicable action of suppress evidence favorable to him, just to secure his conviction, causing that he did not learn about the existence of favorable evidence , (that could have established a reasonable doubt about the author of the arson he was accused and thereafter convicted) until his

---

[7] The Commentary to the Standard expressly elaborates as follow:

Although the prosecutor operated within the adversary system, it is fundamental that the prosecutor's obligation is to protect the innoncent as to convict the guilty, **to guard the rights of the accused** as well as to enforce the rights of the public. Id. Commentary to Standard 3-1.2(c).

arrival to Coleman USP-1 in December 2013, after encountering Mr. Smith, (the individual he had as codefendant during his trial in Miami, back in November, 2000, and with which he did not have any type of contact since 2001) and after obtaining such from him a few days later.[8] (Id. at 2).[9]

18.   Inasmuch as, the reasons for not having discovered the above named information are justified by the physical limitations of petitioner's confinement, as well as his presumption that the government would never commit the despicable action to suppress evidence or violate his due process right to a fair trial, etc., just to gain his conviction, the delay in finding that evidence, should not be considered that such was caused because of petitioner's lack of due diligence, but due to extraordinary circumstances which establish the basis for this motion under §2255(f)(4).

19.   **The Evidence Obtained.**   The information obtained by petitioner (through Mr. Smith) consists of a criminal complaint filed on July 22, 1994, by detectives with the Pompano Beach Police Department, Broward County, Florida, charging an individual named Louis Mohorn with First Degree Murder and Arson, etc., occurred at the B&B Fish Market, for which petitioner had been charged, (thereafter in 1999) along with a couple of newspaper articles, detailing the arrest of Mr. Mohorn, as well as the motives for having committed such arson, and the fear among witnesses as the cause for failing to obtain an indictment against Mr. Mohorn, (Exh. F).

20.   **Its Materiality.**   Perusal of the information obtained by petitioner will show it is material, because of its exculpatory nature, (i.e.,  its   inconsistent

---

[8] Since then, petitioner have diligently tried to corroborate, or to obtain additional information in support of this motion and to learn (knowing the ATF was part of both, the State and the Federal arson investigations) the reasons why the Government did not disclose such information to petitioner before trial. (Id. at ¶3). See also, Exh A, Shouman Decl., at ¶ 5).

[9] See also, Shouman Decl. at ¶ 4-7).

with guilt, raises doubt about evidence of guilt, or diminish guilt).  In other words, will show that it was favorable to him, and would have permitted to establish a "legitimate and meritorious" reasonable doubt defense about the author of the arson and its motive to commit such.[10]

21.  Expressly, considering that: (1) nowhere in the testimony of Dennis Bell, (the government witness who provided specific information concerning the burning of the B&B Fish Market, resulting in the tragic death of James Smith, and for which petitioner was sentence to life imprisonment) did he state that petitioner took him to the location of the fire, ordered him to burn the store, or that he, on his own, provided payment for the arson;[11] (2) in the only two instances which there was testimony that petitioner "allegedly" discussed arson jobs with Bell, neither of those arson resulted in a death or injury to aperson, (Cr. DE #182, 156, 169); and (3) there was testimony at trial from an individual who worked at Amal's, (Mr. Absusamra) that at the time of the burning of Amal's, petitioner was in business for himself, from a time in 1993 until the date of the fire, and was not at Amal's to consul with his father (Mr. Mohammed Shouman) or anyone else about the fire. (Id. at 171).

22.  Inasmuch as, the evidence is material, "if there is a probability that, had the evidence been disclose to the defense, the resulted of the proceeding would have been different," and "a reasonable probability "suffices" to undermine confidence in the outcome."  United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, ____ (1985).  Further, because under the circumstances of this case,

---

[10] E.g. Mr. Mohorn's jealousness over the victim's success and popularity, (enough to want it dead to take over its business) as well as, his long-term family hatred toward the victim, explained in the July 23, 1994, Newpaper Article, attached as Exh. E, at difference of petitioner that did not have any motive or reason for wanting Mr. Smith death.

[11] The testimony specifically, alleged that petitioner (continue on next page....)

that probability was evident, the information suppressed by the government before trial was material, and therefore, should be enough to hear this motion on its merits.

23. **Merits of the Motion.** The merits of petitioner's §2255(f)(4) motion are clear and should not need much argument, as the prosecution in this case ignored its affirmative duty to disclose exculpatory evidence, material either to guilt or punishment that was in its possession, and/or others acting on its behalf. More simple, because the all the requirements to establish a <u>Brady</u> "violation" were present in this case, i.e., the government failed to disclose exculpatory evidence, in its possession or control, material to the outcome of the case. <u>Brady v. Maryland</u>, 373 U.S. at 87 ("...suppression of evidence favorable to an accused...violates due process where the evidence is material to guilt or punishment").

24. **Suppression of the Evidence by the Prosecution.** The facts and circumstances of this case speaks by themselves. The prosecution suppressed evidence in its possession or others under its control as: <u>First</u>, it used at least three witnesses, (i.e., Messers Ayoub, Kearse, and Mossoud) at the federal trial, which had previously provided information, cooperated with the State law enforcement agencies investigating the murder at the B&B Fish Market, (which led to the arrest of Mr. Mohorn as suspect in that murder) and/or that testified in the State grand jury impaneled against Mr. Mohorn on murder charges, etc., what result inconceivable that such occurrences would not have surfaced during the interviews conducted by ATF agents of those witnesses, while investigating the B&B Fish Market arson, and/or by the prosecution while preparing them for their

---

" (...continued from previous page) **just** paid the arsonist, **after** his father (codefendant Mohammed Shouman) **ordered him to do so.** DE #182, at 19; R5: 149, 150. Insufficient to link petitioner to the arson or motive for such.

appearance before the grand jury and trial testimonies in this case. Second, there is specific evidence that the ATF (through Agent Krazak) at the scene of the B&B Fish Market, resulting in the tragic death of James L. Smith) in 1993. Further, that such ATF agent was named in the criminal complaint, filed in 1994, and charging Mr. Mohorn for the murder by arson of Mr. Smith, (Exh. E ) which imply: (1) knowledge and consent by ATF agent Krazack about the State investigation and arrest of Mr. Mohorn for the murder by arson of Mr. James in 1993-1994; (2) that a report must have been prepared by such an ATF agent about its participation on the arson investigation 1993, and its consent to be named in the criminal complaint against Mr. Mohorn in 1994, (id); (3) that such a report must have been entered in the ATF record date; and (4) that such a report should have surfaced when the ATF took over the B&B and Fish Market investigation from the State police.    Lastly, because it is hard to believe that the ATF or the federal prosecution in charge of the arson federal investigation should have not consulted with the State police while conducting such an investigation, expressly, when the confidential informant (Harold Rodes) that incriminated government witness Dennis Bell and codefendant Terrence Smith as the arsonist at the B&B Fish Market, went first to the police before going to the ATF, (R4:72-74).[12]

26.   **Brady Obligation.** Due process under the Fifth Amendment, requires a fair trial, and discovery is instrumental in achieving this requirement. The Supreme Court has consistently adhered to the principle that fundamental due process requires a prosecutor to disclosed favorable or exculpatory material to the defense. See, United States v. Augurs, 427 U.S. 97, 96 S. Ct. 2392 (1976); United States v.Bagley, 473 U.S. 667, 105 S. Ct. 1555 (1995); Strickler v. Greene,

---

[12]    Once petitioner be able to obtain information from the pending FOIA request with the ATF, and/or his Public Record Request witht the Pompano Beach Police Department, more information about this matter will be provided to the Court.

527 U.S. 263, 119 S. Ct. 1936 (1999). Further, knowledge of favorable evidence on the part of any member of the prosecution team, including police and investigators, is imputed to the prosecutor. See also, <u>United States v. Meros</u>, 866 F. 2d 1304, 1309 (11th Cir. 1989)(The Brady rule applies to evidence possessed by the prosecutor team.......)

27. **Brady Violation.** There are three elements to a <u>Brady violation</u>. First, the evidence at issue must be "favorable to the accussed." Second, the evidence must have been suppressed by the [government]. Third, the evidence must have been material, which means that the defendant must have suffered prejudice from the suppression. <u>Banks v. Dretke</u>, 540 U.S. at 691 (quoting <u>Strickler</u>, 527 U.S. at 281–82). "The question is not whether the defendant would more like than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence, <u>Kyles</u>, 415 U.S. at 434, 115 S Ct. 1565–66). To meet this standard, "the defendant does not need to demonstrate that, after discounting the inculpatory evidence in light of the evidence in question, there would not have enough evidence to convict him." <u>Taylor v. Singletary</u>, 122 F.3d 1390, 1395 (11th Cir. 1997). Instead, the defendant must show that the suppressed evidence "could reasonable be taken to put the whole case in such a different light as to undermined confidence in the verdict." Id. <u>Stephens v. Hall</u>, 407 F.3d 1195, 1203 (11 Cir. 2005).

28. There is no doubt that the evidence suppressed by the government was favorable to the petitioner herein, and that he suffered prejudice because of such suppression. Further, that due to the absence of such evidence he did not receive a fair trial, and that such an absence undermined confidence in his guilty verdict as, stated above, the evidence against him was circumstantial and based solely in the testimony of criminal convicted government witnesses, looking for

a better deal in their sentence, etc.   Expressly, having in consideration, that "had petitioner access to the suppressed evidence," he could have been able to contradict or weaken the testimony of those government witnesses, with the testimony of the witnesses who: (1) identified Mr. Mohorn as the individual throwing the fire bomb into the B&B Fish Market; (2) placed him in the area at the time the fired occurred; and (3) indicated a motive for which Mr. Mohorn wanted Mr. Smith death, during the State investigation. (Exh. E). See, e.g., Joe D'Ambrosio v. Bagley, 527 F.3d 489, 498 (6th Cir. 2008)(granting writ on Brady grounds because prosecutor failed to disclose evidence that "would have contradicted or weakened the testimony of the prosecutor's witnesses" and that demonstrate[d] a motive on the part of another individual to kill the victim).

29.   Because the evidence that the prosecution suppressed herein [like in D'Ambrosion, **supra**] would have had the effect of both weakening the prosecution case and strengthening petitioner's "reasonable doubt defense about the author of the arson and its motives to commit such," and there is a probability that the outcome of petitioner's trial would be different, petitioner's motion should be granted or, in the alternative, an evidentiary on the merits of petitioner's motion be scheduled.

30.   **The Alternative Request for Evidentiary Hearing.**   Assuming that the facts and arguments presented herein, although clear and convincing, are not enough to grant the relief sought herein right away, the Court should schedule an evidentiary hearing, thus those facts and arguments, may be developed further, as, if proven, would entitled him to relief. See, e.g., Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir. 1992)("[a] petitioner is entitled to an evidentiary

---

[13] Even, if the prosecution attempted to attenuate the impact of the state witnesses testimony, etc., with evidence that the state grand jury declined to indict Mr. Mohorn, because such action appears to be (Continue on next page ...)

in federal courts if the alleges facts which if proven, would entitled him to relief"); <u>Tosewnd v. Sain</u>, 373 U.S. 293, 307 (1963)(stating that a movant would be entitled to  hearing if allegations, if proven, would establish his right to collateral relief).

Conclusion

31.  Petitioner has demonstrated the existence of an error of constitutional magnitude, which had a substantial and injurious effect or influence on the jury verdict in this case.  Further, the issue was not brought earlier to the Court for reasons beyond his control, but he is bringing it within the one year after discovering the facts supporting his motion under §2255(f)(4), he is entitled to relief as matter of law.

32.  Consistent with the facts, law and arguments set forth above, this Court should vacate or set aside petitioner's conviction.  Alternatively, the Court should enter an Order granting him relief from judgment, thereafter direct a Rule 48 dismissal of this action as to Petitioner Mujahad Shouman, any other relief, if any there be at law, as is deemed just and proper, or schedule an evidentiary hearing on the matter.

Respectfully submitted,

on this 20th day of November, 2014.

By:

Mujahad Shouman, Pro Se
FCC USP -1
PO Box 1033-06785068
Coleman, Fl 33521-0879

---

[13](....Continue from previous page) the result of fear among the witnesses to any retaliation from Mr. Mohorn.  <u>Exh. E</u>, Newspaper article dated August 19, 1994.

## Certificate of Service

I, Mujahad Shouman, pro se petitioner, hereby certify that on this November 20, 2014, I hand delivered to prison officials the foregoing document in a self addressed/first class stamped envelope, with instructions to mail it to the Southern District of Florida, Miami Division, Clerk. I further certify, that on the same day and way, a true and correct copy of the foregoing was sent to:

Christopher J. Clark, AUSA
U.S. Attorney Office
99 Northeast 4th Street, #600
Miami, Fl 33132

Mujahad Shouman
Pro Se Petitioner

Document prepared by Ramon Lopez, C.P.
with the information/documents available
at this time and in behalf of petitioner
Mujahad Shouman who is no knowledgeable
of the law or how to do this motion.

17

EXHIBIT   A

Michael Thomas
Federal Correctional Complex
Coleman, USP-1
PO Box 1033-06785068
Coleman, Fl 33521-0879





7010 1870 0001 7446 7153

Clerk U S District Court
400 N Miami AVE
Room 8N09
Miami, FL 33128-7716
United States

USMS INSPECTED
BY

Legal Mail          Legal Mail          Legal Mail



RECEIVED

NOV 20 2014

DATE

INITIALS

THE ENCLOSED LETTER WAS PROCESSED THROUGH
SPECIAL MAILING PROCEDURES FOR FORWARDING
TO YOU. THE LETTER HAS BEEN NEITHER OPENED
NOR INSPECTED. IF THE WRITER RAISES A
QUESTION OR PROBLEM OVER WHICH THIS
FACILITY HAS JURISDICTION, YOU MAY WISH TO
RETURN THE MATERIAL FOR FURTHER
INFORMATION OR CLARIFICATION. IF THE
WRITER ENCLOSES CORRESPONDENCE
FOR FORWARDING TO ANOTHER ADDRESSEE,
RETURN THE ENCLOSURE TO THE ABOVE ADDRESS.